UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ENDURANCE AMERICAN
SPECIALTY INSURANCE
COMPANY,

      Plaintiff,

v.                                     Case No. 8:17-cv-2832-VMC-CPT

LIBERTY MUTUAL INSURANCE
COMPANY, SAFECO INSURANCE
COMPANY OF ILLINOIS, and
SAFECO INSURANCE COMPANY
OF AMERICA,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      Before me on referral are Defendants Safeco Insurance Company of Illinois (Safeco Illinois) and Safeco Insurance Company of America's (Safeco America) (collectively, Safeco) motions for a determination of their entitlement to attorneys' fees incurred through trial and on appeal. (Docs. 239, 241, 244, 252). Plaintiff Endurance American Specialty Insurance Company (Endurance) opposes Safeco's fee requests. (Docs. 240, 248, 253). After careful review and with the benefit of oral argument, I respectfully recommend that Safeco's motions be granted in part and denied in part.

I.

The background of this case is set forth in prior decisions of both this Court and the Eleventh Circuit Court of Appeals but bears repeating here with some supplementation.  *See* (Docs. 204, 217, 219, 223, 227).  This litigation stems from a June 2015 motor vehicle accident between Robert Smith and Stone Whitener that resulted in Whitener's death.  (Doc. 16).  At the time of the accident, Smith had auto insurance and umbrella policies with Safeco.  *Id.*  Smith obtained these insurance policies through an insurance broker, Comegys Insurance Agency, Inc. (Comegys), which had an Errors and Omissions (E&O) policy with Endurance during the relevant period.  *Id.*

Comegys and Safeco operated under a contract, known as the Limited Agreement, which allowed Comegys to act as an independent contractor for Safeco "for the limited purpose of placing Safeco insurance products."  (Doc. 168-3).  Of significance here, the Limited Agreement also contained a set of indemnification clauses between Comegys and Safeco by which each agreed to indemnify the other in certain circumstances:

> A. [Comegys] shall defend, indemnify, protect, and hold [Safeco] harmless from and against any and all liability for claims, suits, regulatory or administrative proceedings and investigations, losses, damages, costs, penalties and expenses, including court costs and reasonable attorneys' fees related thereto, arising out of or incurred by reason of the breach of this Limited Agreement by, or any actual or alleged negligent or intentional act, error or omission on the part of, [Comegys], its directors, officers, owners, employees, Sub-producers or others acting on [Comegys'] behalf in placing business pursuant to or

carrying out the terms of this Limited Agreement, except to the extent such act, error or omission was expressly and knowingly authorized, concurred in, or ratified by [Safeco]. [Comegys'] indemnification obligation includes all costs, expenses and attorneys' fees incurred by [Safeco] to enforce this indemnity obligation. [Comegys'] obligations under this Section are conditioned upon [Safeco] providing prompt notice to [Comegys] of any claim made or legal or regulatory action brought against [Safeco].

B. [Safeco] shall defend, indemnify, protect, and hold [Comegys] harmless from and against any and all liability for claims, suits, regulatory or administrative proceedings and investigations, losses, damages, costs, penalties and expenses, including court costs and reasonable attorneys' fees related thereto, arising out of or incurred by reason of the breach of this Limited Agreement by, or any actual or alleged negligent or intentional act, error or omission on the part of, [Safeco], its directors, officers, employees or others acting on [Safeco's] behalf in the placement of business pursuant to or carrying out the terms and conditions of this Limited Agreement, except to the extent such act, error or omission was expressly and knowingly authorized, concurred in, or ratified by [Comegys]. [Safeco's] indemnification obligation includes all costs, expenses and attorneys' fees incurred by [Comegys] to enforce this indemnity obligation. [Safeco's] obligations under this Section are conditioned upon [Comegys] providing prompt notice to [Safeco] of any claim made or legal or regulatory action brought against [Comegys].

*Id.* at ¶¶ 7.A–7.B.

In December 2015, Whitener's Estate brought a wrongful death action against Smith in state court (the Underlying Action). (Doc. 16). Safeco assumed the defense of Smith in that case, and Safeco, Smith, and Whitener's Estate thereafter agreed to a consent judgment against Smith in the amount of $7,364,520, coupled with an assignment to Whitener's Estate of Smith's rights against Comegys. *Id.*

After the conclusion of the Underlying Action, Comegys and Endurance received a settlement demand from Whitener's Estate (as assignee of all Smith's rights and claims) for payment of the limit of Comegys's E&O policy with Endurance. *Id.* In support of that demand, Whitener's Estate averred "that Comegys undertook and breached a duty to assess the suitability of the scope and amount of insurance coverage placed on Smith's behalf leaving him allegedly underinsured" at the time of the accident. *Id.* In response to this demand, Comegys sought a defense and indemnification from Safeco pursuant to the indemnification provision in the Limited Agreement. *Id.* Safeco refused Comegys's demand. *Id.*

Ultimately, Comegys, Endurance, and Whitener's Estate engaged in pre-suit mediation. *Id.* As a result of that mediation, in June 2017, Comegys and Endurance entered into a settlement agreement with Whitener's Estate to pay $1,537,500 in exchange for a release of all claims related to the accident and in full settlement of all amounts stemming from the Underlying Action. (Doc. 169-40). Pursuant to that settlement agreement, payment was to be made within thirty days of execution of the agreement. *Id.* at 2.

Several months later, in October 2017, Endurance, individually and as subrogee of Comegys, initiated the present action seeking both equitable and monetary relief. (Doc. 2). In its operative complaint, Endurance asserted a claim for a declaratory judgment that Safeco was responsible for indemnifying Endurance for the claim made by Whitener's Estate, that the Limited Agreement was in full force and effect and that Safeco was responsible for paying the loss pursuant to the Limited Agreement, and

that Endurance was entitled to attorneys' fees and costs.  *Id.*  With respect to monetary relief, Endurance asserted counts for breach of its indemnification clause in the Limited Agreement; for breach of the implied covenant of good faith and fair dealing based upon Safeco's purported failure to comply with its indemnity obligations; and for civil conspiracy, negligent misrepresentation, and fraud upon the court.[1]  *Id.*

Following the filing of its operative complaint, in mid-September 2018, Endurance served an offer of judgement on Safeco and Liberty Mutual pursuant to section 768.79 of the Florida Statutes.  (Doc. 165-1).  As Endurance explained in its offer, it "intended [its settlement proposal] to resolve all claims and all damages that [were] at issue against [the] Defendants," provided the Defendants paid a designated sum of money to Endurance.  *Id.* at 2.  That same month, Safeco America served its own section 768.79 offer of judgment on Endurance, in which it similarly sought to dispose of all claims and damages between it and Endurance for a stated sum.  (Doc. 248-1).  Neither of these settlement proposals were accepted.  (Doc. 165 at 2; Doc. 261 at 14).

The case eventually proceeded to a jury trial in early July 2019.  During that proceeding, Endurance abandoned its claim for declaratory relief.  (Doc. 162 at 2 n.2).  At the conclusion of the trial, the jury found Safeco liable for breach of the Limited Agreement and for breach of the implied covenant of good faith and fair dealing.

---

[1] The amended complaint also included claims against Safeco's parent company, Liberty Mutual Insurance Company (Liberty Mutual).  (Doc. 16).  The parties later agreed to release Liberty Mutual.  (Doc. 162 at 1 n.1).

(Doc. 153).  The jury found in Safeco's favor, however, on the tort claims for civil conspiracy, negligent misrepresentation, and fraud upon the court (Counts 4–6).  *Id.*

Less than two weeks later, in late July 2019, Endurance moved for the entry of judgment on the breach of contract claims.  (Doc. 157).  The Court promptly granted that request (Doc. 161), and the Clerk of Court entered Judgment in Endurance's favor on those counts the same day (Doc. 162).  Safeco appealed that Judgment (Doc. 190) but did not seek a judgment in its favor on the tort claims.  Nor was such a judgment entered.

In May 2022, the Eleventh Circuit reversed the Judgment for Endurance on the breach of contract claims, holding that Safeco did not violate its obligations under either the Limited Agreement or the implied covenant of good faith and fair dealing. (Doc. 227).  Safeco filed a motion in July 2022 seeking to recover the fees it incurred on appeal in the approximate sum of $100,000 (Doc. 239), which the Eleventh Circuit transferred to this Court in September 2022 (Doc. 238).

Upon remand from the Eleventh Circuit, the Court directed the entry of Judgment for Safeco and against Endurance on all counts.  (Docs. 242, 243).[2]  Safeco then filed another motion in September 2022 requesting reimbursement for the fees it paid for the work performed before this Court in the estimated amount of $376,500. (Doc. 244; Doc. 261 at 12).  Endurance opposed both of Safeco's fee requests.  (Docs. 240, 248, 264).

---

[2] The Clerk of Court originally entered a Judgment in Safeco's favor solely as to two counts.  (Doc. 235).  The Court's subsequent Judgment (Doc. 243) corrected this oversight.

I heard argument on the matter, after which I instructed each party to submit a legal memorandum containing all facts and legal authority they wished the Court to consider, and to file reply briefs addressing their opponent's submission. (Doc. 257). The parties have since complied with these instructions (Docs. 261, 262, 263, 264), and Safeco's fee motions are thus ripe for the Court's consideration.

## II.

Safeco offers two bases for its fee requests. The first centers on Florida Statute § 57.105(7) and the indemnification language in the parties' Limited Agreement, while the second revolves around the offer of judgment Safeco America served on Endurance pursuant to Florida Statute § 768.79. Endurance counters that neither of these grounds support Safeco's fee motions and that, even if they did, Safeco's fee requests are untimely and barred by both the doctrines of judicial estoppel and the law-of-the-case. Each of these issues will be addressed in turn.

## A.

I commence my analysis with Safeco's claim that it should be awarded attorneys' fees pursuant to Florida Statute § 57.105(7) and the indemnification language in the parties' Limited Agreement. Under the *Erie* doctrine, federal courts sitting in diversity—as the Court is doing in this action—must apply the substantive law of the forum state and the procedural requirements set forth in federal law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *Royalty Network, Inc. v.*

*Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014) (same) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).  Florida substantive law, including the Florida statutes authorizing the recovery of attorneys' fees, therefore governs here. *See McMahan v. Toto*, 256 F.3d 1120, 1131–32 (11th Cir. 2001) ("[S]tatutes allowing for recovery of attorney's fees are substantive for *Erie* purposes."), *modified on other grounds*, 311 F.3d 1077 (11th Cir. 2002).

Florida courts follow the common law rule that "each party is responsible for its own attorneys' fees unless a contract or statute provides otherwise." *Price v. Tyler*, 890 So. 2d 246, 251 (Fla. 2004) (internal quotation marks and citation omitted); *see also Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 906 F.3d 1329, 1335 (11th Cir. 2018) (noting that Florida law dictates that, "absent a specific statutory or contractual provision, a prevailing litigant has no general entitlement to attorney's fees") (citations omitted).  As a result, "'[f]ee shifting statutes and contractual provisions are . . . strictly construed.'" *Daneshpajouh v. Sage Dental Grp. of Fla., PLLC*, 2023 WL 5132835, at *9 (S.D. Fla. June 20, 2023) (quoting *Air Turbine Tech., Inc. v. Quarles & Brady, LLC*, 165 So. 3d 816, 821 (Fla. Dist. Ct. App. 2015)); *see also Diaz v. Kasinsky*, 306 So. 3d 1065, 1067 (Fla. Dist. Ct. App. 2020) ("Because fee shifting contracts, statutes[,] or rules are in derogation of the common law, they must be strictly construed.") (collecting cases).  In the end, a party requesting reimbursement for attorneys' fees under Florida law bears the burden of establishing a right to such an award. *Army Aviation Heritage Found.*

*& Museum, Inc. v. Buis*, 504 F. Supp. 2d 1254, 1269 (N.D. Fla. 2007) (citing *Salisbury v. Spielvogel,* 451 So. 2d 974, 975 (Fla. Dist. Ct. App. 1984)).

Section 57.105(7)—upon which Safeco relies here—renders a contractual attorneys' fee clause that unilaterally applies to one party to be reciprocal in some instances. *Bank of N.Y. Mellon Tr. Co., N.A. v. Fitzgerald*, 215 So. 3d 116, 119 (Fla. Dist. Ct. App. 2017) (stating that section 57.105(7) serves "to statutorily transform a unilateral attorney's fees contract provision into a reciprocal provision"); *accord Fla. Cmty. Bank, N.A. v. Red Rd. Residential, LLC,* 197 So. 3d 1112, 1115 (Fla. Dist. Ct.  App. 2016) ("[N]otwithstanding that the contractual fee provision is one-sided, entitling only one of the contract's parties to prevailing party fees, by operation of law section 57.105(7) bestows on the other party to the contract the same entitlement to prevailing party fees.").  Specifically, section 57.105(7) states:

> If a contract contains a provision allowing attorney's fees to a party when [it] is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.

Fla. Stat. § 57.105(7).

The Florida Supreme Court has explained that section 57.105(7) consists of two prongs, "the first of which addresses the existence of a fee provision in the underlying contract, and the second of which addresses the requisite prevailing [party] in an 'action . . . with respect to the contract.'"  *Page v. Deutsche Bank Tr. Co. Americas*, 308 So. 3d 953, 959 (Fla. 2020) (quoting Fla. Stat. § 57.105(7)).  As the Court observed in

*Page*, the first clause "requires the existence of 'a contract [that] contains a provision allowing attorney's fees to a party when [it] is required to take any action to enforce the contract.'" *Id.* (quoting Fla. Stat. § 57.105(7)). And the second clause "requires that 'the other party' must 'prevail[ ] in any action, whether as a plaintiff or defendant, with respect to the contract.'" *Id.* (quoting Fla. Stat. § 57.105(7)). The conditions for both clauses must be satisfied for fees to be awarded under section 57.105(7)). *Id.*

In this case, Endurance asserts as a threshold matter that it cannot be liable for fees pursuant to section 57.105(7) since it was not a party to the Limited Agreement. To bolster this contention, Endurance points to *Azalea Trace, Inc. v. Matos*, 249 So. 3d 699 (Fla. Dist. Ct. App. 2018) (per curiam). (Doc. 262 at 15–16). In *Azalea Trace*, a woman and a nursing home entered into a residency contract, which required the woman to pay a substantial entrance fee but which mandated the nursing home to refund a portion of the fee if the woman died within a certain time frame. *Id.* at 700. After the woman went to live at the nursing home, she executed an agreement assigning her right to the refund to her children. *Id.* That assignment included a stipulation that the woman and the children would provide certain benefits to the nursing home, such as "indemnify[ing] and hold[ing the nursing home] harmless from any claims which [might] be brought" because of or in connection with the assignment. *Id.* at 702–03.

When the woman passed, the children sued the nursing home to obtain the refund and, after prevailing, sought attorney's fees under the assignment agreement and section 57.105(7). *Id.* at 701. The appellate court found that despite the fact the

nursing home was a beneficiary of the assignment agreement, the home could not be liable for attorney's fees because it was not a party to the contract.  *Id.* at 702–03 ("Florida law is clear that no person can claim fees under section 57.105(7) unless that person is a 'party' to the contract that includes the fee provision.") (citations omitted).

*Azalea Trace* is of no help to Endurance in this case.  Here, unlike in *Azalea Trace*, Endurance became a subrogee of Comegys and then sued Safeco in that capacity for breach of the indemnification clause set forth in section 7.B. of the Limited Agreement. (Doc. 16).  Moreover, after succeeding on that theory at trial, Endurance insisted that it was entitled to recover the attorneys' fees it incurred pursuant to section 7.B.  (Doc. 211 at 7).  Endurance cannot now avoid liability for Safeco's fees under this same agreement by asserting it was not a party to it.[3]

The fact that Endurance cannot avoid a fee award by claiming it is not a party to the Limited Agreement does not end the inquiry, however.  The question remains whether Safeco is entitled to fees under that contract and section 57.105(7).  The gist of Safeco's contention in this regard is that section 7.B. of the Limited Agreement

---

[3] At oral argument, Endurance mentioned in passing and without citation to any authority that, as a subrogee of Comegys, it only "accede[d] to [Comegys's] rights" and did not "assume their responsibilities."  (Doc. 260 at 28).  Endurance, however, did not raise this specific argument in its legal memorandum (Doc. 262) or in its reply brief (Doc. 264).  As such, it has waived the challenge. *See* (Doc. 257) (instructing the parties to include in their legal memoranda "*all* facts and legal authority they wish[ed] the Court to consider" relative to Safeco's fee motions, and "not [to] incorporate by reference any prior legal arguments made to the Court in writing or at oral argument") (emphasis added).  In any event, a preliminary survey of the case law suggests that Endurance's subrogee contention is unsupported.  *See Allstate Ins. Co. v. Metropolitan Dade Cnty.*, 436 So. 2d 976, 978 (Fla. Dist. Ct. App. 1983) (stating that a "subrogee 'stands in the shoes' of the subrogor and is entitled to all of the rights of its subrogor, but also suffers all of the liabilities to which the subrogor would be subject") (internal citations omitted).

should be deemed a unilateral fee provision that triggers section 57.105(7)'s reciprocity requirement. (Doc. 261 at 21–24). As noted above, section 7.B. directs that Safeco indemnify Comegys for, *inter alia*, any liability for claims "arising out of or incurred by reason of the breach of th[e] Limited Agreement," and that Safeco's indemnification obligation includes the fees sustained by Comegys to enforce this obligation. (Doc. 168-3 at ¶ 7.B.).

The fundamental flaw with Safeco's argument is that section 7.A. bestows it with the same right to fees as the one afforded to Comegys under section 7.B. *See Levy v. Levy*, 326 So. 3d 678, 681 (Fla. 2021) (noting that section 57.105(7) "only applies to a provision that confers on *a* party the right to attorney's fees while not affording a comparable right to the *other* party"). In fact, like section 7.B., section 7.A. necessitates that Comegys indemnify Safeco for, *inter alia*, any liability for claims "arising out of or incurred by reason of the breach of th[e] Limited Agreement," and that Comegys's duty to indemnify Safeco encompasses the fees sustained by Safeco to enforce it. (Doc. 168-3 at ¶ 7.A.).

The Florida Supreme Court's opinion in *Levy* provides helpful guidance in this respect. In that action, the Court addressed a fee clause which "entitle[d] 'either party' to an award of fees upon demonstrating that the other party violated" the agreement. *Levy*, 326 So. 3d at 681. The lower court ruled that section 57.105(7) could be used to authorize fees to the party which properly defended a motion to enforce the agreement. *Id.* at 680–81. The Florida Supreme Court disagreed, pointing out that the fee language at issue did "not confer the right to fees on one identifiable contracting party

12

to the exclusion of the other party." *Id.* at 680–81. Instead, the Court found that it granted "both parties precisely the same contractual right to attorney's fees." *Id.* at 681. The Court therefore concluded that the fee provision was not "unilateral" and that section 57.105(7) did not apply. *Id.* at 681–82.

Here, analogous to *Levy*, the Limited Agreement dictates that both Comegys and Safeco may recover fees from the other party if they are called upon to enforce their right to indemnification. *See* (Doc. 168-3 at ¶¶ 7.A–B.). As a result, to borrow the language of *Levy*, "neither party has a greater right to attorney's fees than the other[,] nor is one favored over the other." *Levy*, 326 So. 3d at 681; *see also RPM Nautical Found., Inc. v. Centennial Bank, N.A.*, 2014 WL 12493268, at *3 (S.D. Fla. Dec. 19, 2014) ("Florida law doesn't guarantee that *all* contractual attorney's fees be mutual, only the type of contractual provision specified in the statute[ ] where one party is entitled to fees when it succeeds in bringing an action to enforce the contract but the other is not."). And, while these two fee provisions are set out in separate clauses, they are contained within the same part of the agreement, mirror each other, and are plainly meant to be read together. *Philip Morris, Inc. v. French*, 897 So. 2d 480, 488 (Fla. Dist. Ct. App. 2004) ("Courts are required to construe a contract as a whole and give effect, where possible, to every provision of the agreement.") (citations omitted).[4]

---

[4] My assessment that the two clauses effectively mirror each other coheres with the Eleventh Circuit's characterization of these provisions in its decision. *See* (Doc. 227 at 6) (describing the two clauses as mandating that Safeco "take responsibility when it messed up and its mess-up affected Comegys (and Comegys . . . to do likewise)."

In sum, I find that Safeco has not met its burden of establishing that the indemnification language in section 7.B. provides a unilateral right to fees which implicates section 57.105(7)'s bilateral requirement. As a result, Safeco's effort to predicate its fee motions on this basis fails.

### B.

I now turn to the second basis upon which Safeco seeks to recover attorneys' fees—namely, Florida's offer of judgment statute found in Florida Statute § 768.79. Like section 57.105(7), section 768.89 represents an exception to the common law rule that each party pays its own fees and is thus "strictly construed." *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 372 (Fla. 2013) (citing *Campbell v. Goldman*, 959 So. 2d 223, 226 (Fla. 2007); *TGI Friday's, Inc. v. Dvorak*, 663 So. 2d 606, 615 (Fla. 1995)); *see also Kuhajda v. Borden Dairy Co. of Ala., LLC*, 202 So. 3d 391, 394 (Fla. 2016) (collecting cases). Section 768.89 provides, in pertinent part:

> *In any civil action for damages* filed in the courts of this state, *if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by [it] or on the defendant's behalf pursuant to a policy of liability insurance or other contract from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorney's fees against the award.* Where such costs and attorney's fees total more than the judgment, the court shall enter judgment for the defendant against the plaintiff for the amount of the costs and fees, less the amount of the plaintiff's award. If a plaintiff files a demand for judgment which is not accepted by the defendant within 30 days and the plaintiff recovers a judgment in an amount at least 25 percent greater than the offer, [it] shall be entitled to recover reasonable costs and attorney's fees incurred from the date of the filing of the demand. If rejected, neither an offer nor demand is admissible in subsequent litigation, except for pursuing the penalties of this section.

Fla. Stat. § 768.79(1) (2018) (emphasis added), *amended by* Laws 2022, c. 2022-271, § 24.  The purpose of section 768.79 is to reduce litigation costs by encouraging the parties to resolve their cases on their own, *Kuhajda*, 202 So. 3d at 395 (internal quotation marks and citations omitted), and to sanction those parties that unreasonably decline to settle, *Diamond Aircraft*, 107 So. 3d at 372.

By its terms, section 768.79 is limited to a "civil action for *damages*," Fla. Stat. § 768.79(1) (2018) (emphasis added), and thus is confined "to a claim in a civil action in which a party seeks only damages," *Diamond Aircraft*, 107 So. 3d at 373.  That is, it does not extend to "'nonmonetary claims.'"  *B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, 855 F. App'x 503, 506–07 (11th Cir. 2021) (quoting *Diamond Aircraft*, 107 So. 3d at 374–75).[5]  Accordingly, the Florida Supreme Court has held that section 768.79 does not apply where a plaintiff asks for "both damages and equitable relief, and in which the defendant has served a general offer of judgment that seeks release of all claims."  *Diamond Aircraft*, 107 So. 3d at 374.

Florida courts have offered at least two reasons for this interpretation of section 768.79.  The first is that a "strict construction of the phrase 'any civil action for *damages*' in [section 768.89] does not include a claim for equitable relief, or one that involves claims for both monetary and nonmonetary relief."  *Diamond Aircraft*, 107 So. 3d at 373 (citing *Winter Park Imps., Inc. v. JM Fam. Enters.*, 66 So. 3d 336, 338–42 (Fla. Dist. Ct. App. 2011); *Palm Beach Polo Holdings, Inc. v. Equestrian Club Ests. Prop. Owners*

---

[5] Unpublished Eleventh Circuit opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

*Ass'n, Inc.*, 22 So. 3d 140, 143–45 (Fla. Dist. Ct. App. 2009)).  The second is that the only method of computation "the Legislature provided in [section 768.79] pertain[s] to the '*amount* of the offer' as compared to the '*judgment obtained.*'"  *Id*. at 375 (quoting Fla. Stat. § 768.79(6)(a)).  And to engage in this analysis, "logic dictates" that a court would have to use a monetary figure "[t]o calculate the *amount* of the judgment obtained in comparison to an offer."  *Id.*  By contrast, section 768.79 does not contain "a method by which [a] court [can] evaluate the amount of a nonmonetary judgment obtained against the amount provided in an offer of judgment."  *Id.*

The fact that a nonmonetary claim for relief is included in an offer of judgment, however, is not necessarily fatal to the offer's enforcement.  *B & D Nutritional*, 855 F. App'x at 506–07 (noting that "the presence of a request for nonmonetary relief is not always dispositive" as to whether section 768.79 applies); *Diamond Aircraft*, 107 So. 3d at 373 (recognizing that a declaratory judgment claim does not preclude recovery under an offer of judgment in all circumstances) (citations omitted).  In *Diamond Aircraft*, which is the leading case on the matter, the Florida Supreme Court reviewed the decisional law on this topic and cited with approval *Nelson v. Marine Group of Palm Beach, Inc.*, 677 So. 2d 998 (Fla. Dist. Ct. App. 1996), in which the plaintiff sought a declaration that it could retain an escrow deposit arising from a breach of contract claim.  *Diamond Aircraft*, 107 So. 3d at 373 (citing *Nelson*, 677 So. 2d at 999).  The Court additionally cited with approval *DiPompeo Construction Corp. v. Kimmel & Assocs., Inc.*, 916 So. 2d 17 (Fla. Dist. Ct. App. 2005), in which the plaintiff requested a declaration

16

that it did not owe a $20,000 commission to the defendant, and the defendant brought a counterclaim to recover the commission. *Diamond Aircraft*, 107 So. 3d at 373 (citing *DiPompeo Constr.*, 916 So. 2d at 18). As the Court in *Diamond Aircraft* explained, in both *Nelson* and *DiPompeo*, the courts deemed section 768.79 to be in play despite the declaratory judgment claims because monetary relief was the remedy actually in question. *Diamond Aircraft*, 107 So. 3d at 373.

The Court compared *Nelson* and *DiPompeo* with*, among other cases, *National Indemnity Co. of the South v. Consolidated Insurance Services*, in which the plaintiff asked for a declaration that an insurance policy was in full force and effect on the day that an underlying tort occurred. *Nat'l Indem. Co. of the South v. Consolidated Ins. Servs.*, 778 So. 2d 404 (Fla. Dist. Ct. App. 2001). In *National Indemnity*, the appellate court concluded that section 768.79 could not be utilized because no damages or payment of money were directly requested. *Id.* at 408. Rather, the court found that the "real issue" in that lawsuit was "insurance coverage for an underlying tort action," as evidenced by the specific type of declaratory relief sought. *Id.*

Since *Diamond Aircraft*, courts evaluating whether to enforce an offer of judgment in suits containing an equitable claim have looked to whether the "true relief" sought is a monetary sum, such as where "success on [the] equitable claim[ ] would simply result in an award of damages." *B & D Nutritional*, 855 F. App'x at 506–07 (citing *Tower Hill Signature Ins. Co. v. Javellana*, 238 So. 3d 372, 377 (Fla. Dist. Ct. App. 2017)); *see also Wickboldt v. Mass. Mut. Life Ins. Co.*, 2021 WL 4438374, at *6–7

(M.D. Fla. Sept. 28, 2021) (collecting cases).  In *Tower Hill*, for example, two insureds pursued money damages under a breach of contract theory and also asserted claims for declaratory relief related to the interpretation of the insurance policy.  *Tower Hill*, 238 So. 3d at 374.[6]  Relying on the principles enunciated by the Florida Supreme Court in *Diamond Aircraft*, the court in *Tower Hill* found that the actual remedy the plaintiffs were requesting was monetary as opposed to equitable in nature.  *Id.* at 377.  In arriving at this conclusion, the court noted that the "question[ ] raised in [the] count for declaratory relief[ ] was subsumed within the true relief sought."  *Id.*

The Eleventh Circuit applied the "true relief" approach in an unpublished decision in *Yacht Club on the Intracoastal Condominium Ass'n, Inc. v. Lexington Ins. Co.*, 599 F. App'x 875, 883–84 (11th Cir. 2015).  In that case, the plaintiff suffered property damages due to a hurricane and filed suit against the defendant insurer, asserting claims for a declaratory judgment and for breach of contract.  *Id.* at 877–78, 883.  The plaintiff's equitable claim asked for a declaration that the "policy [at issue] was valid and enforceable, that [the plaintiff] had a valid and enforceable right to property coverage for the hurricane damage, that certain provisions in the insurance policy were void and unenforceable, and that [the plaintiff] had a right to coverage under the policy for its . . . damages."  *Id.* at 883–84.  After the defendant prevailed and was awarded fees by the district court, the plaintiff appealed, contending that the defendant could not enforce an offer of judgment it served on the plaintiff pursuant to section 768.79 in

---

[6] One of the declaratory judgment claims was later dismissed. *Tower Hill*, 238 So. 3d at 374 n.4.

light of the plaintiff's declaratory judgment count.  *Id.* at 883.  The Eleventh Circuit
found the plaintiff's argument unpersuasive, reasoning:

> It is clear that under *Diamond Aircraft,* we must reject [the plaintiff's]
> argument that attorney's fees under [section] 768.79 are not available in
> any case in which a declaratory judgment accompanies a claim for
> damages.  While the Florida Supreme Court found that cases seeking
> both monetary and non-monetary relief are not eligible for attorney's fees
> under [section] 768.79, by citation to *Nelson* and *DiPompeo*[ ], it reiterated
> that a court should look behind the procedural vehicle used in a
> complaint to discern what true relief is sought.

*Id.*  Employing the "true relief" test, the court in *Yacht Club* noted that the plaintiff's
success on its declaratory judgment request would have resulted in a sum of money
and concluded that "the only dispute in the suit was one for damages." *Id.* at 884.

In another unpublished decision several years later, *Highland Holdings, Inc. v.
Mid-Continent Casualty Co.*, 725 F. App'x 906 (11th Cir. 2018) (per curiam), the
Eleventh Circuit determined that the trial court did not err by denying a motion for
fees under section 768.79 where the complaint contained claims for a declaratory
judgment and for breach of contract.  *Id*. at 907–08.  In that action, the plaintiffs sued
the defendant insurer, averring that the defendant "owed a duty to indemnify [the
plaintiffs'] prospective damages in [a] third-party action."  *Highland Holdings, Inc. v.
Mid-Continent Cas. Co.*, 2017 WL 3877609, at *1 (M.D. Fla. Sept. 5, 2017).  The
plaintiffs later "added a claim . . . for breach of the insurance policy" after they
"settl[ed] the third-party action for $650,000."  *Id.*  Based upon these allegations, the
plaintiffs requested a "declaration of insurance coverage and a judgment in the

amount of the settlement they had paid to the third party." *Highland Holdings*, 725 F. App'x at 908.  After analyzing the matter and without expressly referencing the "true relief" test, the Eleventh Circuit found that the complaint "contained two independent, significant claims, such that it could be characterized only as an action for both damages and non-monetary, declaratory relief."  *Id.* (citing *Palm Beach Polo Holdings*, 22 So. 3d at 143).

More recently, in *Illoominate Media, Inc. v. CAIR Florida, Inc.*, 2022 WL 4589357 (11th Cir. Sept. 30, 2022) (per curiam), the Eleventh Circuit looked to the "true relief" test in resolving an attorneys' fees dispute which stemmed from allegations that the defendants had a hand in convincing Twitter to ban an account belonging to one of the plaintiffs in the action.  *Id.* at *1.  To remedy the harms the plaintiffs claimed they suffered, the plaintiffs sought "'damages in an amount to be proved at trial' and (without elaboration) 'preliminary and permanent injunctions to prevent [the] defendants from continuing their unlawful conduct.'"  *Id.* at *2.  The defendants ultimately prevailed in the litigation and were awarded fees by the district court pursuant to section 768.89 based on an earlier offer of judgment they made to the plaintiffs.  *Id.* at *1–2.

On appeal, the Eleventh Circuit upheld the lower court's decision to apply section 768.89.  *Id.* at *3.  Citing *Diamond Aircraft*, the Eleventh Circuit observed that the Florida Supreme Court endorsed utilizing section 768.79 in "cases that involve[d] a notional nonmonetary claim, but that actually involved disputes solely over monetary" relief.  *Id*. at 2.  The Eleventh Circuit further observed that the "Florida

state courts interpret[ed] *Diamond Aircraft* by looking beyond the procedural posture of a complaint to assess the 'true relief' a party [sought], and [then] appl[ied] section 768.79 if it [was] damages." *Id.* (citing *MYD Marine Distrib., Inc. v. Int'l Paint Ltd.*, 187 So. 3d 1285, 1287 (Fla. Dist. Ct. App. 2016)).

Here, Safeco urges the Court to apply the "true relief" test explicitly utilized by the Eleventh Circuit in *Yacht Club* and *Illoominate Media* and to construe Endurance's declaratory judgment claim as sounding in damages just like Endurance's claims for monetary relief.[7]  (Doc. 261 at 24–27; Doc. 263 at 1–2).  Endurance counters that *Highland Holdings* controls and that the inclusion of the declaratory judgment count necessarily precludes enforcement of Safeco America's offer of judgment.  (Doc. 262 at 4–11; Doc. 264 at 1–2).[8]  After careful review, I find that Safeco has the better argument.  Several considerations inform my determination.

To start, it is noteworthy that prior to the Eleventh Circuit's reversal, Endurance seemingly took a position in its fee motion which is contrary to the one it now advances.  (Doc. 165).  It maintained in its motion that its own offer of judgment

---

[7] Safeco additionally contends that Endurance abandoned its claim for declaratory relief, and that the Court should therefore not consider this count as part of its section 768.79 analysis. (Doc. 261 at 26–27).  It appears, however, that Endurance did not drop its equitable claim until trial, which was long after Safeco America served its settlement proposal in September 2018.  (Doc. 239-4).  The Eleventh Circuit has stated that a party's decision "not to go to trial on the claims for which it [seeks] injunctive relief" does not mean that the "'true relief'" it requests is solely monetary.  *B & D Nutritional*, 855 F. App'x at 508 (citing *S. Specialties, Inc. v. Farmhouse Tomatoes, Inc.*, 259 So. 3d 869, 871 (Fla. Dist. Ct. App. 2018); *Starboard Cruise Servs., Inc. v. DePrince*, 259 So. 3d 295, 297, 301–02 (Fla. Dist. Ct. App. 2018)).

[8] To the extent the parties suggest *Yacht Club* and *Highland Holdings* are binding on the Court, they are incorrect.  *See* 11th Cir. R. 36-2; *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007) ("Unpublished opinions are not controlling authority[.]").

served on Safeco pursuant to section 768.79 entitled it to fees, even though its settlement proposal—like Safeco's here—sought "to resolve *all* claims against the Defendants." (Doc. 165).[9] This necessarily means that Endurance's offer of judgment endeavored to dispose of *both* its declaratory judgment claim and its claims for money damages.   The fact that Endurance grounded its fee request on section 768.79—like Safeco does now—bolsters Safeco's assertion that the "true relief" sought by Endurance in this litigation is monetary.

Safeco's argument is also supported by the Eleventh Circuit's decision in *Yacht Club*.  As alluded to above, the equitable relief requested by the plaintiff insured in *Yacht Club*—much like equitable relief sought by Endurance in this action—was "a declaration that the . . . policy [at issue] was valid and enforceable, that [the plaintiff] had a valid and enforceable right to property coverage for the hurricane damage [in question], that certain provisions in the insurance policy were void and unenforceable, and that [the plaintiff] had a right to coverage under the policy for its . . . damages." *Yacht Club*, 599 F. App'x at 883–84; *cf.* (Doc. 16 at 10) (seeking a declaration that Safeco was "responsible for paying the [l]oss pursuant to the terms of the Agency Agreement," in addition to a declaration that Safeco was responsible for indemnifying Endurance for the claim made by Whitener's Estate).  The fact that the items identified in Endurance's declaratory judgment count were "but an element and 'subsumed' in

---

[9] Endurance's representation about the breadth of its offer of judgment largely comports with the language in the offer itself, including an attestation by Endurance that it "intended [its offer] to resolve all claims and all damages that [were] at issue against Defendants."  (Doc. 165-1 at 3, 4).

[Endurance's] breach of contract claim[s]" buttresses this determination.  *Perez v. Praetorian Ins. Co.*, 2019 WL 2255578, at \*5 (S.D. Fla. Feb. 26, 2019) (quoting *Tower Hill*, 238 So. 3d at 377), *report and recommendation adopted*, 2019 WL 2254952 (S.D. Fla. Mar. 15, 2019); *see also Tower Hill*, 238 So. 3d at 377 (finding that the "true relief" requested by the insureds was monetary as opposed to equitable in nature, where the declaratory judgment count "was subsumed within the true relief sought").  Indeed, Endurance had to prevail on those issues in order to be entitled to an award of damages.

The Eleventh Circuit's decision in *Highland Holdings* does not dictate a different result.  As an initial matter, it merits highlighting that the court in that case did not mention or distinguish the opinion in *Yacht Club*.  *See Highland Holdings*, 725 F. App'x at 906.  And while the court in *Highland Holdings* did cite *Diamond Aircraft*, it did not expressly reference the "true relief" test, as the Eleventh Circuit did in *Yacht Club* and *Illoominate Media*.  *Id.*

Furthermore, the declaratory relief requested by the plaintiffs in *Highland Holdings* focused more on indemnification, insofar as it sought only a declaration that the defendant had a "duty to fully indemnify the [plaintiffs] for any loss or damage arising [from or out of] the [u]nderlying [l]awsuit." (Doc. 261-1 at 6).  As the Eleventh Circuit described in *Highland Holdings*, this claim was one for a declaration of "insurance coverage."  *Highland Holdings*, 725 F. App'x at 908.  This reasoning is similar to that employed by the court in *National Indemnity*, which declined to apply

section 768.79 on the basis that "[n]o money damages or payment of money [was] directly requested" and that the "real issue" in the case was insurance coverage for an underlying tort action. *National Indemnity*, 778 So. 2d at 408.

In addition to the above considerations, I note that the court's analysis in *Yacht Club* appears to align more closely with the decisions of other federal and state courts in Florida which have been called upon to employ the "true relief" test. *See, e.g.*, *Wickboldt*, 2021 WL 4438374, at *7 (determining that "the 'true relief' at issue was monetary relief, not nonmonetary relief" where the plaintiff's claims for a declaratory judgment and money damages "were intertwined and presented the same question of interpretation of [a] disability insurance policy and its riders"—namely, the "amount of monthly disability benefits [the defendant would be] obligated to pay to [the p]laintiff" during the relevant period); *Lawrence v. ACE Am. Ins. Co.*, 2019 WL 8273660, at *4–6 (M.D. Fla. Oct. 24, 2019) (concluding that the "true relief" was damages where the plaintiff insurer "asserted claims for monetary relief, along with a claim for a declaratory judgment that [another insurer's] policy provided coverage for the accident[ at issue], that [the other insurer] wrongfully denied coverage, and that [the other insurer] should have paid [a stated amount] that [the plaintiff] paid towards the settlement of [the insured's] claim") (citing *Yacht Club*, 599 F. App'x at 883; *Tower Hill*, 238 So. 3d at 377–78); *Polk Cnty. v. Highlands-in-the-Woods, LLC*, 227 So. 3d 161, 163–64 (Fla. Dist. Ct. App. 2017) (finding that the plaintiff's count for declaratory relief and for inverse condemnation all "sought recovery of the additional development expenses [the plaintiff] incurred" due to a county requirement and that "[t]herefore,

the 'real issue' in th[e] case was entitlement to damages, not a declaratory judgment") (citations omitted).  In fact, one court in this District has observed that the cases in which Florida courts have deemed section 768.79 to be inapplicable post-*Diamond Aircraft* have mainly "involved claims for injunctive relief or specific performance." *Wickboldt*, 2021 WL 4438374, at *7 (citing *S. Specialties*, 259 So. 3d 869; *Starboard Cruise Servs.*, 259 So. 3d 295).

Finally, it bears pointing out that "the concern noted in *Diamond* [*Aircraft*] about a lack of methodology for applying section 768.79 where nonmonetary relief is sought" is absent in this action.  *Wickboldt*, 2021 WL 4438374, at *7.  Akin to the situation in *Wickboldt*, the monetary figure specified in Safeco America's offer of judgment "can readily be compared to the amount[ ] in the judgment" entered by the Court here.  *Id.* In sum, I find that section 768.79 applies to Safeco America's settlement proposal.

Endurance alternatively contends that Safeco America's offer of judgment is "procedurally deficient" because it did not conform to the requirements of Florida Rule of Civil Procedure 1.442.  (Doc. 262 at 11–14; Doc. 264 at 3).  That rule "implements section 768.79," *Diamond Aircraft*, 107 So. 3d at 376, and dictates the service, form, and content of an offer of judgment.[10]

To meet the strictures of Rule 1.442, a settlement proposal must "be sufficiently clear and definite to allow [an] offeree to make an informed decision without needing

---

[10] Section 768.79 utilizes the term "offer of judgment," while Rule 1.442 employs the phrase "proposal for settlement."  Courts use these terms interchangeably.  *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 632 F. 3d 1195, 1198 n.2 (11th Cir. 2011); *Ruiz v. Policlinica Metropolitana, C.A.*, 260 So. 3d 1081, 1086 n.3 (Fla. Dist. Ct. App. 2018).

clarification." *Alamo Fin., L.P. v. Mazoff*, 112 So. 3d 626, 629 (Fla. Dist. Ct. App. 2013) (quoting *State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1079 (Fla. 2006)). "'If ambiguity within the proposal could reasonably affect [an] offeree's decision, the proposal will not satisfy the [rule's] particularity requirement.'" *Duong v. Ziadie*, 153 So. 3d 354, 358 (Fla. Dist. Ct. App. 2014) (quoting *Nichols*, 932 So. 2d at 1079). "Ambiguity" in this context "is defined as 'the condition of admitting more than one meaning.'" *Sada v. City of Altamonte Springs*, 2012 WL 503840, at *5 (M.D. Fla.  Feb. 15, 2012) (quoting *Saenz v. Campos*, 967 So. 2d 1114, 1117 (Fla. Dist. Ct. App. 2007)). And because Rule 1.442—like section 768.79—is in "derogation of the common law rule" that each party should pay its own fees, it is "strictly construed" as well. *Diamond Aircraft*, 107 So. 3d at 372 (citing *Campbell v. Goldman*, 959 So. 2d 223, 226 (Fla. 2007); *TGI Friday's, Inc. v. Dvorak*, 663 So. 2d 606, 615 (Fla. 1995)).

That said, Rule 1.442 "does not demand the impossible."  *Anderson v. Hilton Hotels Corp.*, 202 So. 3d 846, 853 (Fla. 2016) (quoting *Nichols*, 932 So. 2d at 1079).  In other words, it does not compel the offering party to eliminate any ambiguity, just any reasonable ambiguity.  *Id.*; *Ramirez v. Scottsdale Ins. Co.*, 2022 WL 4096728, at *3 (S.D. Fla. Aug. 18, 2022) (citing *Anderson*, 202 So. 3d at 853), *report and recommendation adopted*, 2022 WL 4094562 (S.D. Fla. Sept. 7, 2022).

In the end, "offers of judgment are intended to reduce judicial labor, not create more."  *Ramirez*, 2022 WL 4096728, at *3 (citing *Anderson*, 202 So. 3d at 853). Accordingly, "courts are discouraged from 'nitpicking' offers of judgment, and

proposals for settlement generally, in search of ambiguity." *Id.*; *see also Jacksonville Golfair, Inc. v. Grover*, 988 So. 2d 1225, 1227 (Fla. Dist. Ct. App. 2008) (instructing courts to "use reason and common sense and [to] interpret [an] offer [of judgment] as a whole to avoid unreasonable results").

In this case, Safeco America's settlement proposal stated, in relevant part:

Defendant [Safeco America] pursuant to [s]ection 768.79 of the Florida Statutes, serves this [p]roposal for [s]ettlement to [Endurance]:

1.      This [p]roposal is made pursuant to [s]ection 768.79 of the Florida Statutes.

2.      This [p]roposal:
   a.   Is made by Safeco America to Endurance;
   b.   *Resolves all claims and damages in this action between Safeco America and Endurance*;
   c.   *Includes any conditions set forth in [s]ection 768.79 of the Florida Statutes*;
   d.   Is for a total amount of $10,000.00 (ten thousand dollars), payable by Safeco America to Endurance;
   e.   Includes no amount to settle a claim for punitive damages, as there is no such claim; and,
   f.   Includes, and resolves, all claims for attorney's fees, which are part of the legal claim by Endurance against Safeco America.

(Doc. 248-1) (emphasis added).

Endurance posits that Safeco America's offer of judgment did not comply with the version of Rule 1.442 which was in effect during the relevant period[11] because it

---

[11] Although Rule 1.442 was amended in 2022, *In re Amends. to Fla. Rules of Civ. Proc.*, 344 So. 3d 940 (Fla. 2021), the version that is controlling here is the one which existed in 2018 when Safeco America served its offer of judgment on Endurance, *Ramirez*, 2022 WL 4096728, at *2 (noting that the

failed to "state with particularity any relevant conditions" and to "state with particularity all nonmonetary terms of the proposal." Fla. R. Civ. P. 1.442(c)(2)(C)–(D) (2017); *see also* (Doc. 262 at 11–12). To bolster this argument, Endurance asserts that the offer did not identify whether Endurance's acceptance of the proposal's terms would result in a dismissal with or without prejudice or how its claims would be resolved, such as by a release or judgment, and that the offer also improperly incorporated by reference "any conditions set forth in" section 768.79. (Doc. 262 at 12). These contentions are unavailing.

The Third District Court of Appeal squarely rejected Endurance's first argument in *Manuel Diaz Farms, Inc. v. Delgado*, 193 So. 3d 71 (Fla. Dist. Ct. App. 2016). In that case, the court found that a settlement proposal did not run afoul of Rule 1.442 merely because it neglected to address "whether the claims would be resolved by full or partial release, dismissal, or any other means." *Id.* at 73. In arriving at this determination, the *Delgado* court quoted *Jacksonville Golfair*, 988 So. 2d 1225, in which the First District Court of Appeal explained:

> Appellees argue that the settlement proposal did not include provisions describing how the specific claims would be dismissed, thus it required speculation on how the settlement would be procedurally consummated. We disagree. In *Palm Beach Polo Holdings, Inc. v. Madsen, Sapp, Mena, Rodriguez & Co.*, 957 So. 2d 36 (Fla. Dist. Ct. App. 2007), the Fourth District found no ambiguity in a settlement proposal that sought to settle all pending claims in the case. The proposal in that case stated, "This offer, if accepted, will settle all pending claims in this action." *Id.* at 37.

applicable version of Rule 1.442 for purposes of the court's analysis is the one in effect at the time the offer was made) (citing *J.J.'s Mae, Inc. v. Milliken & Co.*, 763 So. 2d 1106, 1107 (Fla. Dist. Ct. App. 1999)).

> The offeree argued that this proposal was defective since it did not state whether, if accepted, the claims would be dismissed or whether the offeror would release the offeree. *Id.* The court rejected this argument, since section 768.79, Florida Statutes, and Florida Rule of Civil Procedure 1.442 do not require that a proposal contain this type of language. *Id.* at 38. The proposal contained clear language indicating that, if accepted, the settlement would have ended the litigation and disposed of all pending claims. *Id.* No further particularity was required as to how the claims would be settled.

*Delgado*, 193 So. 3d at 73 (quoting *Jacksonville Golfair*, 988 So. 2d at 1228). The court in *Delgado* went on to conclude that "[t]he inclusion of terms regarding a release—the very mention (and form) of which has engendered sufficient quibbling to jeopardize the efficacy of the fee-shifting rule and statute—is not required." *Id.*

Endurance's reliance on *Kane v. Rose*, 2009 WL 10667877 (S.D. Fla. Mar. 16, 2009) and *JES Props., Inc. v. USA Equestrian, Inc*, 432 F. Supp. 2d 1283 (M.D. Fla. 2006) is misplaced. In *Kane*, the court deemed the defendant's settlement proposal to be infirm because the defendant offered to resolve the "legal" claims but additionally stated that it intended to pursue a suit for malicious prosecution. *Kane*, 2009 WL 10667877, at *2. Thus, the question as to "whether a dismissal with or without prejudice was to be expected, or whether a full or a partial release was to be expected . . . was particularly important." *Id.* at *3.

In *JES*, the plaintiffs sought, *inter alia*, an injunction preventing the defendants from continuing to engage in the statutory violations alleged in the lawsuit. 432 F. Supp. 2d at 1293. The court determined that the defendants' settlement proposals were fatally flawed for a number of reasons, including that they "failed to address the

[plaintiffs' request for] injunctive relief" and failed to resolve the matter of certain "future acts" which were at issue in the action. *Id*. at 1293–94. The court found these deficiencies to be significant because "[i]f the plaintiffs had accepted the [defendants'] offers, they might still have been forced to litigate their requests for injunctive relief." *Id*. at 1294. To emphasize this point, the court observed that "'[t]he purposes of section 768.79 include the early termination of litigation'" and that "'[a]n offer of judgment that would not allow immediate enforcement on acceptance [was] invalid.'" *Id*. (quoting *Di Paola v. Beach Terr. Ass'n*, 718 So. 2d 1275, 1277 (Fla. Dist. Ct. App. 1998)). The court then went on to add that the defendants' proposals also neglected "to specify whether the claims would be resolved 'by a release (full or partial), a dismissal, or any other means' so that [p]laintiffs could 'fully evaluate its terms and conditions.'" *Id*. at 1294 (citing *Lucas v. Calhoun*, 813 So. 2d 971, 973 (Fla. Dist. Ct. App. 2002)).

Endurance reads this last finding by the *JES* court too broadly. Viewed in its proper context, the court's criticism regarding the lack of clarity in the defendants' offers about the proposed disposition of the action was one of a series of related factors animating its overall disapproval of the offers' failure to adequately confront the plaintiffs' injunction request. The common denominator in all the defects listed by the court was that they collectively made it difficult to discern whether the plaintiffs would "still [be] forced to litigate" the question of injunctive relief even after agreeing to the defendants' settlement proposal. *Id.* at 1294. Endurance has not identified any similar ambiguity in Safeco America's offer of judgment here.

Endurance's complaint about the inclusion in Safeco America's offer of "any conditions set forth in [s]ection 768.79" (Doc. 262 at 12) fares no better. The crux of this contention is that Safeco America's reference to section 768.79 is ambiguous because although section 768.79 "contains multiple sections, subsections, and subdivisions," it does not contain any "conditions" and the proposal itself did not itemize those conditions in any event. *Id.*

The first part of Endurance's argument can be readily dispatched. A survey of the case law reveals that courts have utilized a number of labels to describe the components of section 768.79, including the term "conditions." *See, e.g.*, *In re 3M Combat Arms Earplug Prods. Liab. Lit.*, 2021 WL 4269173, at *4 (N.D. Fla. Aug. 9, 2021) (stating that section 768.79 "permits an award of attorney's fees if certain *conditions* are met") (emphasis added); *Sindicich v. Amica Mut. Ins. Co.*, 2016 WL 11468591, at *3 (M.D. Fla. Feb. 1, 2016) ("The Florida Supreme Court has held that section 768.79 creates a substantive right to attorney's fees upon the satisfaction of [the enumerated] *conditions*.") (emphasis added), *report and recommendation adopted*, 2016 WL 3563874 (M.D. Fla. July 1, 2016). And even were it true that there are, in fact, "no conditions set forth in section 768.79," as Endurance now maintains (Doc. 262 at 12), then it is hard to see how Safeco America's incorporation of "*any*" section 768.79 conditions in its proposal created an ambiguity, much less a reasonable one. *Anderson*, 202 So. 3d at 853.

As for the second part of Endurance's argument, it wholly ignores the fact that the terms contained in section 768.79 are compulsory in nature, or, at the very least,

operate by default.  Take, for example, the subsection of 768.79 that Safeco highlights in response to Endurance's challenge.  (Doc. 261 at 29; Doc. 263 at 2–3).  That subsection—section 768.79(4)—directs that "[a]n offer *shall* be accepted by filing a written acceptance with the court within [thirty] days of service." Fla. Stat. § 768.79(4) (2018) (emphasis added).  Endurance fails to specify anything in Safeco America's settlement proposal which could reasonably be construed as indicating that this or any other mandatory term in section 768.79 would not apply as set forth in the statute. *Anderson*, 202 So. 3d at 853 (explaining that Rule 1.442 "does not demand the impossible" and does not insist that the offering party eliminate all ambiguities) (quoting *Nichols*, 932 So. 2d at 1079).[12]

One other item about Safeco America's offer of judgment that warrants the Court's attention.  While it is uncontested that Safeco America made this settlement proposal and not Safeco Illinois, the parties do not sufficiently brief what effect, if any, this issue might have on Safeco's fee motions.  In light of this oversight, as well as the fact that this matter may be better addressed as part of the fee amount inquiry, I recommend that the Court leave this item for another day.

---

[12] If anything, a review of the decisions dealing with section 768.79 offers of judgment suggests that the use of such language has been employed in other actions without objection. *See, e.g.*, *Sindicich*, 2016 WL 11468591, at *5–6 (involving an unobjected to term in a settlement proposal that stated "[t]here [were] no relevant conditions to this [p]roposal for [s]ettlement other than those set forth within this [p]roposal and Florida Statutes § 768.79"); *Univ. of Miami v. Intuitive Surgical, Inc.*, 2007 WL 9751759, at *2 (S.D. Fla. Mar. 14, 2007) (involving an unchallenged term in an offer of judgment that there were "no conditions attached to th[e] offer other than . . . those applicable under the provisions of [section] 768.79. . . ."), *report and recommendation adopted*, 2007 WL 9751730 (S.D. Fla. Apr. 25, 2007).

In sum, I find that Safeco America's inclusion in its settlement proposal of "any conditions set forth in [s]ection 768.79" does not invalidate that proposal. In arriving at this conclusion, I take heed of the Florida Supreme Court's admonition that a court should not "nitpick" offers of judgment, which are intended to reduce judicial labor, not engender more. *Anderson*, 202 So. 3d at 853.

C.

As noted above, Endurance contends that irrespective of its other arguments, Safeco's fee motions are time-barred under Federal Rule of Civil Procedure 54 with respect to the tort claims upon which Safeco prevailed at trial. (Doc. 262 at 25).[13] Safeco disagrees, asserting that its fee requests are timely. (Doc. 261 at 15–18).

Rule 54 provides that a party may ask for an award of attorneys' fees and related nontaxable expenses where it is authorized to do so by statute, rule, or other grounds. Fed. R. Civ. P. 54(d)(2). Although Rule 54 sets forth a procedure for seeking attorneys' fees, it does not "create . . . a right to recover[ such] fees." *Floyd v. Stoumbos*, 2022 WL 17416564, at *1 (M.D. Fla. July 19, 2022) (quoting *Northstar Healthcare Consulting, LLC v. Magellan Health, Inc.*, 2020 WL 10486256, at *29 (N.D. Ga. Feb. 20, 2020)). A party seeking fees must therefore designate the basis upon which its fee request is predicated. Fed. R. Civ. P. 54(d)(2)(B)(ii).

In this case, as discussed previously, Safeco maintains that it should be awarded fees as the prevailing party pursuant to a number of statutes, including section 768.79.

---

[13] Endurance does not assert that Safeco's fee requests relative to the contract claims are likewise time-barred. *See* (Doc. 262 at 25).

33

(Docs. 261, 263).  Florida law defines a "prevailing party" as the party that succeeds "on the significant issues in the litigation.'"  *Martinair Holland, N.V. v. Benihana, Inc.*, 815 F. App'x 358, 360 (11th Cir. 2020) (per curiam) (quoting *Moritz v. Hoyt Enters., Inc.*, 604 So. 2d 807, 810 (Fla. 1992)).  Where the issues in an action are sufficiently distinct, however, there may be multiple prevailing parties.  *Id.* at 360–61 ("Florida law permits more than one prevailing party in a lawsuit where each of the claims that support an attorney's fees award is separate and distinct.") (citing *Leon F. Cohn, M.D., P.A. v. Visual Health & Surgical Ctr., Inc.*, 125 So. 3d 860, 863 (Fla. Dist. Ct. App. 2013) (per curiam)).  Ultimately, a "court usually must make th[e prevailing party] determination once the litigation ends, as that is when the significant issues in the case tend to crystalize." *Id*. (citing *Shaw v. Schlusemeyer*, 683 So. 2d 1187, 1188 (Fla. Dist. Ct. App. 1996)).

Under Rule 54, a prevailing party must file a motion for fees "no later than [fourteen] days after the entry of judgment" unless a statute or court order provides otherwise.  Fed. R. Civ. P. 54(d)(2)(B).  Rule 54 instructs that the term "judgment" includes "a decree and any order from which an appeal lies."  Fed. R. Civ. P. 54(a). The rule's fourteen-day deadline ensures "that the opposing party is informed of the claim [for fees] before the time for appeal has elapsed," and affords the court "an opportunity . . . to resolve fee disputes shortly after trial, while the services performed are freshly in mind."  Fed. R. Civ. P. 54, advisory committee note to 1993 amendment.

Rule 58 defines when a judgment is considered to be "entered."  It begins by establishing that "[e]very judgment and amended judgment must be set out on a

separate document" with certain delineated exceptions not applicable here.  Fed. R. Civ. P. 58(a).[14]  Rule 58 subsequently states:

> (c)    *Time of Entry.  For purposes of these rules, judgment is entered at the following times*:
> (1)    if a separate document is not required, when the judgment is entered in the civil docket under Rule 79(a); or
> (2)    *if a separate document is required, when the judgment is entered in the civil docket under Rule 79(a) and the earlier of these events occurs*:
> (A)    *it is set out in a separate document*; or
> (B)    *150 days have run from the entry in the civil docket.*

Fed. R. Civ. P. 58(c) (emphasis added).  The purpose of the time frames in Rule 58 is to safeguard against the appeal period "linger[ing] on indefinitely."  Fed. R. Civ. P. 58, advisory committee note to 2002 amendment ("The result of failure to enter judgment on a separate document is that the time for making motions under Rules 50, 52, 54(d)(2)(B), 59, and some motions under Rule 60, never begins to run.").

Notwithstanding these deadlines, a new fourteen-day period for filing a fee motion may arise under certain circumstances when a judgment is entered after an appeal.  *See* Fed. R. Civ. P. 54, advisory committee note to 1993 amendment (explaining that "[a] new period for filing will automatically begin if a new judgment is entered following a reversal or remand by the appellate court . . .").  "[T]he common sense of th[is] proposition lies in the fact that the identity of the prevailing party is unascertained until after the appeal" in some instances.  *Cap. Asset Rsch. Corp. v.*

---

[14] A separate document is not necessary for an order disposing of a motion: (1) for a judgment under Rule 50(b); (2) to amend or make additional findings under Rule 52(b); (3) for attorney's fees under Rule 54; (4) for a new trial, or to alter or amend the judgment, under Rule 59; or (5) for relief under Rule 60.  Fed. R. Civ. P. 58(a).

*Finnegan*, 216 F.3d 1268, 1272 n.8 (11th Cir. 2000) (per curiam).  The Eleventh Circuit has suggested that the appropriate test for deciding if the clock should be restarted for purposes of Rule 54 is "'whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.'"  *Wane v. Loan Corp.*, 613 F. App'x 879, 881 (11th Cir. 2015) (quoting *Fed. Trade Comm'n v. Minneapolis–Honeywell Regul. Co.*, 344 U.S. 206, 211–12 (1952)).

Against this backdrop, Endurance's timeliness challenge fails.  The gist of that argument is that Safeco's fee requests as to the tort claims are untimely because Safeco prevailed on those counts at trial and should have sought fees pursuant to its offer of judgment by early May 2021 given the time frames established in Rules 54 and 58. (Doc. 262 at 25–30).  Endurance reasons in this respect that Safeco secured a favorable determination on the tort claims as of late April 2021 by operation of Rule 58(c) and was therefore purportedly compelled to move for fees within fourteen days of the "entry" of that determination.  *Id.* at 25–30.  And because Endurance's calculated deadline elapsed well before Safeco filed its instant fee motions in September 2022, it insists Safeco's motion is time-barred.[15]  (Docs. 223, 239, 244).

The fatal flaw in Endurance's position is that even if a judgment as to the tort claims was deemed to have been entered in Safeco's favor as far as back as late April

---

[15] Endurance states that it is "unclear" why the Court's earlier Judgment "only referenced the contract claims," (Doc. 262 at 26), yet Endurance proposed that the Court enter judgment only on those counts (Doc. 157-1), which is what the Court did.

2021, as Endurance avers, Safeco would still have been required to demonstrate a legal basis to recover fees.  And while Endurance now contends that Safeco should have moved for fees on its offer of judgment solely as to the tort claims, Safeco would have had to overcome the fact that Endurance obtained a judgment in its favor on the contract claims, which—significantly—constituted all the relief to which it was entitled in the action.  As a result, Safeco could not have met the conditions set forth in Florida's offer of judgment statute, which necessitated—of relevance here—that Safeco show it had either secured a judgment of "no liability" or that the judgment obtained by its opponent, Endurance, was "at least 25 percent less than" Safeco's offer. Fla. Stat. § 768.79.

The Eleventh Circuit's decision in *Capital Asset* buttresses this conclusion.  In that case, the plaintiff asserted a trade secret cause of action and two breach of contract claims against the defendant.  *Capital Asset*, 216 F.3d at 1269.  Following a bench trial, the district court found in favor of the plaintiff on the trade secret cause of action and awarded the plaintiff all the relief it "could have received had it prevailed on its breach of contract claims."  *Id.*  The court also granted the plaintiff's later request for fees.  *Id.* The defendant appealed.  *Id.*

The Eleventh Circuit reversed both the judgment in favor of the plaintiff and the attendant fee award it secured.  *Id.*  On remand, the defendant sought fees based upon a contractual provision allowing such relief to the prevailing party, and the district court granted same.  *Id.*

37

The plaintiff then appealed this fee award, contending, among other things, that the defendant's fee request was untimely because the defendant did not seek fees until after the appeal. *Id.* at 1271. Akin to Endurance here, the plaintiff claimed that the defendant prevailed before the district court on some of the claims as of the conclusion of the bench trial and "should have sought attorneys' fees either before the [court entered its] judgment or within a short time thereafter[.]" *Id.*

The Eleventh Circuit rejected this argument, stating at the outset that an award of attorneys' fees under the circumstances presented was "a matter addressed to the broad discretion of the district court." *Id.* The court then went on to explain, *inter alia*, that since the plaintiff "received all of the relief it would have received had it prevailed on the contract claims, it [could] hardly be said that [the defendant], although it successfully defended against recovery of such relief on the contract theories, was the prevailing party." *Id.* at 1272 (citations and footnote omitted). The court added that it was "entirely understandable that [the defendant] would thus construe the matter" in any event, and concluded that the district court did not abuse its discretion in awarding fees to the defendant. *Id.* at 1272–73.

In this case, similar to *Capital Asset*, the identity of the prevailing party was not ultimately determined "as a practical matter" until after Safeco's appeal. *Id.* at 1273. And it was certainly reasonable that Safeco would have viewed the situation as such at the time. *Id.* at 1272. In such a scenario, a court—as in *Capital Asset*—may properly utilize its "broad discretion" to award fees. *Id.* at 1271, 1273 ("We emphasize that an award of attorneys' fees in circumstances such as those presented in this case is a

matter addressed to the broad discretion of the district court.").  I respectfully submit the Court should do so here.

### D.

Endurance lastly argues that Safeco is foreclosed from recovering fees under the doctrines of judicial estoppel and the law-of-the-case.  (Doc. 262 at 20–24; Doc. 264 at 4–5).  Neither of these contentions survive scrutiny.

"Judicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions in *separate* judicial, including quasi-judicial, proceedings."  *Salazar-Abreu v. Walt Disney Parks & Resorts U.S., Inc.*, 277 So. 3d 629, 631–32 (Fla. Dist. Ct. App. 2018) (per curiam) (emphasis added) (quoting *Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1066 (Fla. 2001)).  "The doctrine protects the integrity of the judicial process and prevents parties from making a mockery of justice" by submitting contrary pleadings and by "playing fast and loose with the courts."  *Id.* at 631 (internal quotation marks and citations omitted).

"In diversity cases, 'the application of the doctrine of judicial estoppel is governed by state law.'"  *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1358 n.7 (11th Cir. 2018) (citing *Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.*, 44 F.3d 925, 930 (11th Cir. 1995)).  There are four elements to a claim of judicial estoppel in Florida:

> (1) A claim or position successfully maintained in a former action or judicial proceeding (2) bars a party from making a completely inconsistent claim or taking a clearly conflicting position in a subsequent action or judicial proceeding, (3) to the prejudice of the adverse party, (4)

where the parties are the same in both actions, subject to the special fairness and policy considerations exception to the mutuality of parties requirement.

*Salazar-Abreu*, 277 So. 3d at 631 (internal quotation marks, footnote, and citations omitted).

Stated simply, "[j]udicial estoppel applies when a party in a current proceeding has successfully maintained an inconsistent position in a prior proceeding to the prejudice of the adverse party in the current proceeding." *Landmark Funding, Inc. ex rel. Naples Syndications, LLC v. Chaluts*, 213 So. 3d 1078, 1080 (Fla. Dist. Ct. App. 2017) (citing *Blumberg*, 790 So. 2d at 1066). Judicial estoppel cannot be invoked, however, "when 'both parties are equally in possession of all the facts pertaining to the matter relied on as an estoppel; where the conduct relied on to create the estoppel was caused by the act of the party claiming the estoppel, or where the positions taken involved solely a question of law.'" *Salazar-Abreu*, 277 So. 3d at 632 (quoting *Blumberg*, 790 So. 2d at 1066).

For a party's positions to be inconsistent for purposes of the judicial estoppel doctrine, they must be "irreconcilable." *Page*, 308 So. 3d at 960. In *Page*, for example, a bank sought to foreclose against a borrower pursuant to a note and mortgage that contained a unilateral fee provision. *Id.* at 954. The bank established standing at the time of trial but not when the suit was filed. *Id.* at 958. The bank argued the borrower should be judicially estopped from seeking fees under section 57.105(7) and the

unilateral fee provision because the borrower prevailed on her argument that the bank initially lacked standing.  *Id.* at 961.

The Florida Supreme Court disagreed, holding that the borrower's position the bank failed to demonstrate standing on the date the action was filed was not "irreconcilable" with her ensuing request for fees pursuant to section 57.105(7).  *Id.* at 960.  This was because "[t]here was no adjudication that the note and mortgage never existed or that the [b]ank never acquired the right to enforce the note and mortgage. The [b]ank simply failed to carry its burden of proving it was the holder of the endorsed note at the time suit was filed."  *Id.* at 960; *see also Maisonneuve v. Situs Invs., LLC*, 326 So. 3d 707, 709 (Fla. Dist. Ct. App. 2021) (applying *Page* in finding that a party could recover attorney's fees pursuant to a mortgage even if the mortgage was deemed unenforceable on statute of limitations grounds because "the contract existed").  In reaching this conclusion, the Florida Supreme Court also considered the equities of the case, which it found "hardly weigh[ed] in favor of estopping" the borrower since the bank brought the lawsuit without appropriately investigating its right to enforce the note.  *Page*, 308 So. 3d at 960.

The law-of-the-case doctrine relatedly provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Mussacchio v. United States*, 577 U.S. 237, 244–45 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)); *see also Lebron v. Sec'y of Fla. Dep't of Children & Families*, 772 F.3d 1352, 1360 (11th Cir. 2014) ("Under the 'law of the case' doctrine, the findings of fact and conclusions of law by an appellate

court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.") (internal quotation marks omitted); *Fla. Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001) ("The doctrine of the law of the case requires that questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings.").

Here, according to Endurance, the Eleventh Circuit's determination that section 7.B. of the Limited Agreement was not applicable given the facts of this litigation is now the "law of the case," and that Safeco is judicially estopped from seeking fees pursuant to that contractual provision. (Doc. 262 at 20–24). As in *Page*, however, the Eleventh Circuit did not rule that the Limited Agreement "never existed" or that Endurance "never acquired the right to enforce" it. *See Page*, 308 So. 3d at 960. Rather, the Eleventh Circuit found that "Comegys [had] no right to indemnification *in this circumstance*, so Endurance [had] no viable claim." (Doc. 227 at 3) (emphasis added). The court further recognized that to prevail on a breach of contract case based on section 7.B., Endurance could have proven that its claim fell into one of three alternative factual scenarios identified by the court. *Id.* at 15. Thus, a fair reading of the Eleventh Circuit's opinion is that the indemnification provision was simply not triggered relative to Safeco on the particular facts before the court. The Eleventh Circuit's holding does not suggest that it either explicitly or implicitly decided the question of whether Safeco could ultimately seek fees as the prevailing party under that same provision. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005) (per curiam) ("The [law-of-the-case] doctrine operates to preclude courts

from revisiting issues that were decided explicitly or by necessary implication in a prior appeal.").

As for judicial estoppel, Safeco did not take a position on appeal that was clearly inconsistent with its entitlement to fees. It merely contended that it had no duty to indemnify Comegys under the Limited Agreement with respect to Endurance's attempt to recover Comegys's settlement with the Estate. *See* (Doc. 78 at 14) ("By the plain language of the Agency Agreement, its indemnity provision is not implicated by the Estate's claim against Comegys.").

Nor did Safeco succeed on an irreconcilable position in another proceeding. *See Searcy*, 902 F.3d at 1358 n.7 (explaining that judicial estoppel did not apply "to inconsistent positions taken in the course of a single trial"); *Page*, 308 So. 3d at 960. Although Endurance points out that some courts have stated that judicial estoppel may apply in the same action, *see, e.g.*, *In re Adoption of D.P.P.*, 158 So. 3d 633, 639 (Fla. Dist. Ct. App. 2014), it appears from the greater weight of authority—including decisions issued by both the Florida Supreme Court and the Eleventh Circuit interpreting Florida law—that judicial estoppel can only be invoked when a party maintains conflicting positions in separate matters, *see, e.g.*, *Searcy*, 902 F.3d at 1358 n.7 (explaining that, under Florida law, judicial estoppel "applies only when a party maintains inconsistent positions in *separate* proceedings") (emphasis added); *Page*, 308 So. 3d at 960 ("Judicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions in *separate* judicial, including quasi-judicial, proceedings.") (emphasis added) (quoting *Blumberg*, 790 So. 2d at 1066).

In any event, Endurance fails to establish any prejudice as a result of Safeco's initial defense of the suit and its later efforts to obtain fees once it prevailed. *Salazar-Abreu*, 277 So. 3d at 631 (noting the requirement of demonstrating prejudice to the adverse party in the current proceeding) (quoting *Landmark Funding*, 213 So. 3d at 1080; *see also Fintak v. Fintak*, 120 So. 3d 177, 186–87 (Fla. Dist. Ct. App. 2013) (rejecting the application of the judicial estoppel doctrine where the parties did not aver that "they relied on [a] representation or that they changed position on such admission to their detriment"). Nor do the equities weigh in favor of estopping Safeco from securing fees given the circumstances presented. *Page*, 308 So. 3d at 960.

III.

Based on the foregoing, I respectfully recommend that Safeco's motions for a determination of their entitlement to attorney's fees incurred through trial and on appeal (Docs. 239, 244) be granted in part and denied in part, as described herein.

Respectfully submitted this 15th day of August 2023.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's

failure to file written objections, or to move for an extension of time to do so, waives

that party's right to challenge on appeal any unobjected-to factual finding(s) or legal

conclusion(s) the District Judge adopts from the Report and Recommendation.  *See*

11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).


Copies to:
Honorable Virginia M. Hernandez Covington, United States District Judge
Counsel of record